IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDREW R. LOPEZ,

          Petitioner,              No. CIV S-02-2563 FCD DAD P

   vs.

WARDEN GALAZA, et al.,

          Respondents.          <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the undersigned will recommend that petitioner's habeas application be denied.

PROCEDURAL HISTORY

        Petitioner challenges a prison disciplinary conviction that resulted in the loss of 90 days time credits.  On November 13, 2000, petitioner was charged with delaying a peace officer in the performance of his duties.  At the disciplinary hearing conducted on December 15, 2000, the hearing officer found petitioner guilty of the charge.  Petitioner pursued an administrative appeal and exhausted his state court remedies.  Petitioner's federal habeas petition was filed on November 25, 2002.  Respondents filed an answer to the petition on February 26, 2003, and petitioner filed a traverse on March 24, 2003.

THE PLEADINGS

I.  <u>The Petition</u>

On his federal habeas petition form, petitioner states the following four grounds for relief:

Ground one:  Petitioner was denied relevant evidence to prove his innocence in violation of the confrontation and due process clauses guaranteed to him.

Supporting FACTS (state *briefly* without citing cases or law): Petitioner was denied meaningful investigative services, evidence from those services that would have proved his innocence and also proved malicious prosecution by false charges and motive, and, videotape and witnesses to support and prove petitioner's petition. These were denied unlawfully and the charge was issued maliciously.  (See attached pages, and declaration, for these.)

Ground two:  Petitioner was denied a fair hearing and an impartial hearing officer.  No reliable evidence existed.

Supporting FACTS (state *briefly* without citing cases or law):  At the hearing the hearing officer was given notice by petitioner of the facts and statutory and federal violations that occurred and that he was committing.  However, the hearing officer knowingly chose to disregard clearly established authorities and find petitioner guilty. The hearing officer abused his position and violated petitioner's administrative, statutory and constitutionally guaranteed rights. (See attached pages for these.)

Ground three:  Petitioner's right to due process were [sic] violated when the guilty finding was approved following an [sic] required independant [sic] audit.

Supporting FACTS (state *briefly* without citing cases or law):  Due process requires an independant [sic] audit be conducted of the hearing officers findings to, among other duties, ensure due process was met.  Cpt. M. Wright and A.W. A.J. Malfi failed to perform those duties owed petitioner when "rubber stamping" (approving) the guilty finding although violations of due process are clear on the face of the charge sheet and it's [sic] attachments.  (See attached sheets for these.)

Ground four:  Respondent's [sic] unconstitutionally interferred [sic] with petitioner's rights to to [sic] redress of grievance and to due process.

Supporting FACTS (state *briefly* without citing cases or law): Initially, through threat and coersion [sic] respondent's [sic]

interferred [sic] with petitioner's seeking redress; subsequently, persons BIASED (and prohibited due to prior involvement) violated petitioner's due process by participating in the appeal process and denying the appeal although clear evidence was before them requiring the appeal to be granted; and, also, subsequent denials of the administrative appeals (required per PLRA) although the record clearly showed that due process required reversal. (See attached for these.)

(Pet. at pages numbered (5) and (6).)

Attached to the form petition are the following documents: a six-page statement of the case, containing facts and argument (pet., attached pages lettered (a) through (f)); fourteen enumerated contentions (pet., attached pages lettered (f) through (k)); a prayer for relief (pet., attached page lettered (k)); a copy of CDC-115 log number ASU-00-11-0027, including two continuation pages and form CDC 115-A (pet., Ex. A); petitioner's trust account withdrawal order dated November 29, 2000, requesting a copy of his defense statement for his disciplinary hearing (pet., Ex. A); and a declaration by petitioner dated November 21, 2002, in which he states that prison staff refused to provide him with meaningful law library access and refused to copy two exhibits – a copy of California Penal Code § 2932 and a page of citations that petitioner gave to the hearing officer on December 15, 2000 – for attachment to his federal habeas petition. None of attachments are linked to the four grounds for relief alleged in the petition.

In his statement of the case, petitioner alleges and argues as follows: two closed circuit video cameras are located on opposite sides of the administrative segregation yard where the incident that led to the disciplinary charge took place; the yard cameras record all events from the time prisoners are released to the yard in the morning until all prisoners are returned to their cells in the afternoon; on November 13, 2000, a correctional officer removed the television from C-Section to provoke the inmates; when the inmates were released to the exercise yard, several of them informed Correctional Officer Bartos that they wanted to speak to the captain before their yard time ended; during yard time, several inmates reminded Officer Bartos of their desire to talk to the captain before yard time ended; at the 20-minute warning before yard recall, several

inmates told Officer Bartos again that they wanted to talk to the captain; petitioner and eight other inmates subsequently received a CDC 115 from Officer Bartos for delaying him in the performance of his duties on November 13, 2000; petitioner believed that state regulations entitled him to receive the services of an investigative employee, to have witnesses at his hearing, to have written documentation of the reason any witness was denied, to question witnesses, to present documentary evidence, to have an impartial hearing officer, and to receive a fair hearing; on November 29, 2000, Officer Cole introduced himself to petitioner as his investigative employee; Officer Cole refused to obtain copies of petitioner's evidence unless petitioner paid for the copies; petitioner asked Officer Cole to preserve the videotape of the administrative segregation yard for November 13, 2000, to obtain certain documents, and to return for a witness list and questions for the witnesses; Officer Cole never returned; on December 4, 2000, Officer Miller attempted to give petitioner an incomplete investigative report; petitioner told Officer Miller that Officer Cole had never returned to complete his duties; petitioner told Officer Miller that he wanted the videotape to be available, asked her to interview two inmates, and gave her a list of witnesses, a witness questionnaire, and a statement to be placed on the record; on December 15, 2000, petitioner was escorted to an office and introduced to Lieutenant Granish as his hearing officer; petitioner requested his witnesses and the videotape; the documents petitioner had provided to the investigative employees were not in the file; Lieutenant Granish telephoned Officer Miller, who stated that she had placed petitioner's documents and witness statements in the file folder; Lieutenant Granish was unable to reach Officer Cole by telephone; petitioner did not have an opportunity to question either of the investigative employees; Lieutenant Granish stated that the videotape had been destroyed and he did not have an opportunity to view it; Lieutenant Granish refused to call the eight inmate prisoners requested by petitioner because petitioner had requested all persons named in his CDC 115 but did not name them; Lieutenant Granish's reasons for denying the inmate witnesses were not documented to petitioner's satisfaction; Lieutenant Granish denied petitioner's request to call Captain Briddle as a witness

4

on the ground that the captain had no relevant information; in petitioner's presence, Lieutenant Granish made three unsuccessful attempts to contact Officer Bartos, the reporting employee, by telephone; Lieutenant Granish then postponed the hearing until 7:00 p.m.; when the hearing resumed, Lieutenant Howard, who had classified petitioner's CDC 115, was present; petitioner believed that Lieutenant Howard's presence violated state regulations; Lieutenant Granish advised petitioner that he had contacted Officer Bartos by telephone, petitioner objected that he had a right under state regulations to have the reporting employee present at the hearing or to be present during the telephone call made by the hearing officer; petitioner complained of numerous violations of state regulations and moved for dismissal of the charge; Lieutenant Granish stated that he was finding petitioner guilty of the charge, revoking his yard privileges for ten days, and assessing 90 days loss of good time credits; petitioner believed that Lieutenant Granish's finding was based solely on the reporting employee's report; under state rules, a hearing officer's findings are audited; a captain and an associate warden reviewed and approved the findings of Lieutenant Granish; petitioner filed an inmate appeal; at the first level of appeal, a sergeant and a correctional officer responded in a manner that petitioner perceived as threatening; petitioner withdrew his appeal but then resubmitted it; the resubmitted appeal was denied at the second level by the same lieutenant who had signed the written findings in place of Lieutenant Granish, violating the regulation that prohibits review by someone who participated in the decision appealed and also violating the regulation concerning the rank required for second-level review; the chief deputy warden signed off on the lieutenant's second-level review and then participated in the classification committee that subsequently revoked petitioner's credits; the appeal was denied at the third level despite the facts, evidence, and authorities cited by petitioner.  (Pet., attached pages at (a) through (f).)

   In his contentions, petitioner asserts that the following rights "are inherent through the 1st, 5th, 6th and 14th Amendments to the U.S. Constitution":  the right to redress of grievances, the right to be free from arbitrary government actions, the right to present witnesses

1  and documentary evidence in one's defense, the right not to have false charges brought, the right

2  to an impartial fact finder, the right to a fair hearing, and the right to an impartial and fair review

3  of grievances.  (Pet., attached page (f).)  Citing state regulations and a Ninth Circuit case,

4  petitioner asserts that inmates have a right "to timely speak to program staff upon request."  (Id.,

5  attached page (g).)  Describing himself as a well known complainer, grievance filer, and "legal

6  begal [sic]," petitioner asserts that the CDC 115 issued by Officer Bartos was a false charge

7  made "in retaliation for petitioner's continued exercise of his rights to file grievances."  (Id.)

8  Petitioner reiterates the alleged due process violations of numerous individuals as described in

9  his statement of facts.  (Id., attached pages (h) through (k).)

10         In his prayer for relief, petitioner requests the following declaratory and injunctive

11  relief:  a declaration of his rights, reversal of the CDC-115, permanent removal of the CDC-115

12  from his files, the restoration of 90 days time credits, and reversal of the denial of his inmate

13  appeal.  Petitioner requests compensatory damages from specific prison employees in varying

14  amounts, punitive damages, and all costs incurred in filing and pursuing his claims.

15         In the rules violation report issued on November 13, 2000, Log No. ASU-00-11-

16  0027, Correctional Officer Bartos charged petitioner with delaying a peace officer in the

17  performance of his duties.  The report sets forth the following circumstances:

18         On 11/13/00, at approximately 1130 hours, while performing my
           duties as D6 Yard Observation Officer I ordered yard recall to the
19         CC#3 Northern Hispanic/Black yard.  At approximately 1140
           hours the inmates on the yard informed me that they were refusing
20         to come off of the yard until they spoke to the captain.  I notified
           Correctional Sergeant Thompson and he tried to communicate with
21         the inmates who continued to refuse orders to exit the yard.  At
           approximately 1150 hours, I ordered the inmates off the yard
22         individually by calling the names and CDC numbers in the order
           that they went to yard; Inmate's [sic] LOPEZ, D-86271; PEREZ, J-
23         74133; MONTENEGRO, K-32878; GUZMAN, K-87999;
           SPARKS, H-90171; OWENS, E-92965; BOR, K-42691;
24         WILLIAMS, K-42603; JACKSON, D-47735.  All of the inmates
           on the yard refused to exit.  At approximately 1200 hours Captain
25         Briddle addressed the inmates to exit the yard.  After Captain
           Briddle addressed the inmates I again ordered the inmates to exit
26         the yard.  At approximately 1300 hours the inmates exited the yard

6

1    without further incident.  All of the inmates addressed in this report
     are aware of this report.  Inmate LOPEZ IS NOT a participant in
2    the Mental Health Delivery System.

3    (Pet., Ex. A at 1.)

4        At the disciplinary hearing conducted on December 15, 2000, petitioner

5    acknowledged understanding the charge, pled not guilty to the charge, and presented a written

6    statement in his defense.  (Id., Ex. A at 2.)  The hearing officer found petitioner guilty of delaying

7    a peace officer in the performance of his duties, in violation of § 3005(b) of the California Code

8    of Regulations.  The hearing officer's findings are as follows:

9        All evidence was considered during this hearing.  The
         preponderance of that evidence as described herein supports a
10       finding of GUILTY to the charge of DELAYING A PEACE
         OFFICER IN THE PERFORMANCE OF DUTIES, a Division (D)
11       offense and includes the contents of the disciplinary report in
         which Correctional Officer Bartos observed and documented, "I
12       was notified that the Inmates on the CC #3 Northern
         Hispanic/Black Yard refused to come off the yard until they talked
13       to the captain.  All Inmates were ordered from the yard and
         continued to refuse orders to exit the yard.  I ordered all Inmates
14       individually by calling their name and CDC number.  All inmates
         refused to leave the yard."  Inmate Lopez failed to provide any
15       evidence which could refute the charge and the evidence presented
         against him.
16
         DISPOSITION:  Inmate LOPEZ was assessed (90) days loss of
17       credit for a Division D offense.  Inmate LOPEZ was counseled and
         reprimanded.
18

19   (Id., Ex. A at 3.)

20       The hearing officer recorded the following reasons for denying witnesses:

21       At the time LOPEZ received the CDC-115A, he requested that the
         Reporting Employee, Correctional Officer Bartos, be present at this
22       hearing.  This witness was contacted telephonically and informed
         the SHO [senior hearing officer] that the RVR [rules violation
23       report] for Inmate LOPEZ was correct as written.  Correctional
         Officer Bartos also informed the SHO that the entire yard refused
24       all direct orders to leave the yard to "lock-up" after numerous
         orders had been issued.  The time span on this issue was over an
25       hour.  Between the telephonic conversation and the I.E.
         [investigative employee] report, the validity of the Reporting
26       Employee Report stands as issued.  Inmate LOPEZ requested the

7

following staff members be present at the hearing:
(1) CDC Director Cal Terhune
(2) Warden, R. Castro
(3) Captain, J. Briddle
The SHO denied the witnesses listed above because each of the witnesses were not there during said action, each has no relevant information to provide guilt or innocence.  Under the 115A Section specifying witnesses, this Section specifically states:
Witnesses (Give name and title or CDC number)

Inmate LOPEZ failed to provide any of this information on his witnesses as listed.  Inmate LOPEZ addresses different issues in name and CDC number [Section].

(Id., Ex. A at 2.)

II.  Respondents' Answer

Respondents deny that any of petitioner's rights were violated in the disciplinary proceedings at issue and contend that the petition fails to state or establish grounds for habeas corpus relief.  Respondents argue that petitioner received the process due in the disciplinary proceedings, that there was evidence in the record that supported the hearing officer's decision, and that the evidence was sufficiently credible.

Respondents note that prison disciplinary proceedings are not part of a criminal prosecution and that prisoners are not afforded the full panoply of rights in such proceedings.  Citing Superintendent v. Hill, 472 U.S. 445, 454 (1985), respondents state that when a prison disciplinary hearing may result in the loss of good time credits, due process requires that an inmate receive advance written notice of the disciplinary charges, an opportunity to call witnesses and present documentary evidence in his defense, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Respondents also look to Hill for the applicable evidentiary standard:  the requirements of due process are satisfied if "some evidence" supports the decision to revoke good time credits.  472 U.S. at 455.  Respondents observe that ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence and that "the relevant question is whether

1   there is any evidence in the record that could support the conclusion reached by the disciplinary

2   board."  472 U.S. at 455-56.

3           Respondents point out that petitioner has not alleged that he was not provided

4   with advance written notice of the disciplinary charges, a written statement by the factfinder of

5   the evidence relied upon, or the reasons for the disciplinary action taken.  Petitioner claims that

6   he was denied the ability to defend himself against the charges because a videotape of the

7   incident was not available at his hearing and the hearing officer denied witnesses.  Respondents

8   argue that the videotape could not have shown that petitioner exited the yard when he was

9   ordered to do so, because petitioner admits that he and the other inmates were invoking their

10  rights to seek redress and did not exit the yard when ordered to do so.  Respondents contend that

11  the videotape would have been inculpatory in nature and would not have assisted petitioner in his

12  defense.  With regard to the hearing officer's denial of petitioner's request to call the director, the

13  warden, and the captain as witnesses, respondents argue that these witnesses were properly

14  denied because, as the hearing officer stated, they were not present when petitioner and the other

15  inmates refused to leave the yard and could not have provided relevant information.  Finally,

16  respondents assert that the hearing officer did not rely solely on the reporting employee's report

17  but explicitly indicated that petitioner was found guilty on the basis of the statements in the

18  report and on petitioner's inability to provide any evidence that refuted the charge.

19          Respondents reiterate that the court should not re-weigh the evidence or second-

20  guess the of strategies employed by the participants where there is some evidence on the record

21  to support the guilty finding.  Respondents request that the petition be denied and this action be

22  dismissed.

23  III.  Petitioner's Traverse

24          In his traverse, petitioner reiterates most of the allegations and arguments

25  contained in his petition and attacks respondents' answer in numerous ways.

26  /////

1    Petitioner contends that the rule violation report is unreliable because the

2  reporting employee had a retaliatory motive for issuing it.  (Traverse at 14.)  Relying on <u>Hines v.</u>

3  <u>Gomez</u>, 108 F.3d 265, 268-69 (9th Cir. 1997), petitioner argues that the "some evidence"

4  standard of <u>Hill</u> does not apply to the initial accusation of a rule violation report where the

5  prisoner is alleging that the reporting employee's accusation is false and retaliatory.  (<u>Id.</u>)

6  Petitioner contends that the CDC-115 issued by Officer Bartos is "dripping with motivation to

7  misrepresent."  (<u>Id.</u> at 15.)  Petitioner argues further that the hearing officer was biased, that

8  respondents failed to address his right to "assistance with a meaningful defense," that it was

9  Officer Bartos who destroyed the videotape, and that he should have been allowed to present

10  evidence in his defense, including the videotape and all of the witnesses he requested.  (<u>Id.</u> at 15-

11  17.)  Petitioner claims, without explanation, that the videotape was exculpatory and would have

12  proved his innocence.  (<u>Id.</u>)  Petitioner disputes respondents' argument that the three staff

13  witnesses were properly denied and complains that respondents have attempted to mislead the

14  court by failing to discuss the denial of petitioner's request for the reporting employee, the two

15  investigating employees, and all eight inmate witnesses at the hearing.  (<u>Id.</u> at 17-24.)  Petitioner

16  concludes that the state courts' decisions do not meet the standards set forth in 28 U.S.C. §

17  2254(d).  (<u>Id.</u> at 28.)

18    Attached to the traverse is a copy of the CDC-115 that includes the five-page

19  defense statement petitioner submitted to the hearing officer on December 15, 2000.  (<u>Id.</u>, Ex. A,

20  Attach. at 1-5.)  In this statement, petitioner states that he did not leave the yard until after

21  Captain Briddle spoke to the inmates, thereby admitting that he did not leave the yard when all

22  inmates were ordered to do so by Correctional Officer Bartos at 11:30 a.m., did not leave the

23  yard when his name was called out by the officer approximately fifteen to twenty minutes later,

24  and did not leave the yard until some time after noon.  (<u>Id.</u> at 1.)  Petitioner's defense statement

25  reveals that his assertion of innocence is not grounded on an assertion that he left the yard when

26  /////

1  ordered to do so but is based on his characterization of the yard recall order as an unlawful order

2  he was not required to obey and of his conduct as justified and therefore lawful.  (<u>Id.</u>)

3          Petitioner's written defense begins as follows:

4          H.D.S.P.'s D-6 ad seg block I/M's were experiencing numerous
           adverse situations (602'd seperately [sic]).  Our 602's were not

5          being returned, and our attempt at resolving the issues informally
           and with superior staff (sgt./lt.) were ineffective due to

6          insubordination (see DOM § 33030.5.2.5), and higher staff's fear
           & failure to assert their required authority to ensure I/M's received

7          incentives, priveleges [sic] and rights due them.  Accordingly, such
           acts exhibit incompetency as defined (and required) per D.O.M. §§

8          33030.5.2.2 and 33030.5.2.3 (inneficiancy [sic]) and "neglect of
           duty" 33030.5.2.4. as well as willful disobediance [sic] for refusing

9          to enforce directives previously given by Cpt. Briddle (in violation
           of D.O.M. §§ 33030.5.2.15) and a total disregard for dept. rules &

10         regulations (see 33030.6.2).  Due to the futility of our attempts, and
           in accordance with C.C.R. §§ 3343(1) and 3345, on Nov. 13th,

11         2000 we requested to promptly speak with program staff Cpt.
           Briddle.  After Captain Briddle walked away we returned to our

12         cells, enforcing our rights to medical treatment, safety and security
           of the prison from rogue and insubordinate staff who display a total

13         disregard for the dept. rules, and to ensure our grievances are heard
           by taking necessary measures to ensure Capt. Briddle's presence

14         per §§ 3343(1) & 3345 was forced upon us by subordinate staff's
           intentional disregard for our rights, failure to summon superior

15         staff upon request and theft of our CDC 602's and GA 22's.

16         On Nov. 13th, 2000, I never unlawfully refused any order.  The
           United States District Court has ruled that I/M's can not be forced

17         to follow an unlawful order.  It is a fundamental tenet of due
           process that prisoners can not be forced to chose [sic] one right

18         over another.  Therefore, a reasonable person can not justify
           punishing a person for enforcing his <u>right to speak to higher</u>

19         <u>authority</u> to protect <u>his rights to seek redress.</u>  To do so violates due
           process & equal protections.  However, Nov. 22, 00 I received

20         CDC 115 (ASU-00-11-27), authored by C/O Bartos, reviewed by
           Sgt. T.R. Thompson and classified by Lt. Howard, which is illicit

21         by retalliating [sic] against us for exercising cleary [sic] established
           rights, rules & regulations.  Additionally, it is unsubstantiated as a

22         matter of law, and should have never been issued, cleared by
           review or classified as a violation of the directors rules.

23         Furthermore, the charges are false and unsubstantiated; nor will
           any additional relevant info. surface to substantiate any unlawful

24         breach of rules.

25  (<u>Id.</u> at 1.)  Petitioner denies that he refused "a lawful or legitimate instruction," asserts that the

26  inmates "were only seeking justice in the only productive way available–after exhaustion of all

11

1  other attempts," and claims that "'delaying a peace officer in the performance of his duties' is not

2  a lawful charge under those circumstances." (Id. at 2.)  He accuses Officer Bartos of falsifying

3  his report by misstating some facts and omitting others in order to obscure the important fact that

4  the inmates were seeking redress of their grievances.  (Id. at 2-3.)

5          Petitioner concluded his defense statement with a demand that the investigating

6  employee obtain responses from six staff members and that all six be present at his hearing:  (1)

7  the director of the CDC, due to his responsibility for promulgating and enforcing rules and

8  regulations and for training and supervising employees; (2) the warden of High Desert State

9  Prison, due to his duty to enforce rules and regulations and his responsibility to train and

10 supervise staff; (3) Captain Briddle, due to the fact that he "directly involved himself" in

11 affording the inmates their rights; (4) Lieutenant Howard and Sergeant Thompson, due to the fact

12 that they were required to know the rules and regulations relevant to their duties and also "for

13 liability purposes"; and (5) Officer Bartos, to answer petitioner's questions.  (Id. at 3-4.)  In

14 addition, petitioner demanded that "all other persons named in the CDC 115 attend the hearing"

15 and requested that the ombudsman be present.  (Id. at 5.)  Petitioner stated that the ombudsman

16 "has relevant information regarding the events originating from and surrounding these issues,"

17 asserted that "[w]e have questions for the ombudsman," and asked that the ombudsman bring log

18 books and other evidence of the complaints that had been brought to his attention concerning the

19 handling of inmate appeals and the conduct of staff in administrative segregation.  (Id.)

20         Also attached to petitioner's traverse is a copy of the Lassen County Superior

21 Court's order filed April 2, 2002, denying petitioner's first state habeas petition.[1]  The order is set

22 forth here:

23              Petitioner, in the custody of the California Department of
              Corrections at Corcoran State Prison, alleges he was improperly
24

25         _____

           [1] Petitioner received "postcard denials" from the California Supreme Court and the
26 California Court of Appeal denying the petitions filed with those courts.  (Pet. at page numbered
   (3).)

1    found guilty of violating 15 CCR §3005(b) while housed at High
     Desert State Prison.  He alleges, but does not document, exhaustion
2    of his administrative remedies.  It appears to the court that
     petitioner is simply asking the court to reevaluate the evidence that
3    was presented in the in-prison disciplinary proceedings.  This court
     will not do so.  (See, <u>Sultan Turkish Bath, Inc. v. Police</u>
4    <u>Commissioners</u> (1959)[)]  The petitioner has failed to show that
     there is no evidence to support the administrative disciplinary
5    determinations (<u>Superintendent v. Hill</u> (1985) 472 U.S. 445) and
     the petition for writ of habeas corpus is denied.

6

7    (Traverse, Ex. D.)

8                                  ANALYSIS

9    I.  <u>Federal Habeas Corpus Standards of Review</u>

10            A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

11   some transgression of federal law binding on the state courts.  <u>Peltier v. Wright</u>, 15 F.3d 860, 861

12   (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>,

13   456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation

14   or application of state law.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>,

15   202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.

16            This action is governed by the provisions of the Antiterrorism and Effective Death

17   Penalty Act of 1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v.</u>

18   <u>Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) as amended by the AEDPA sets

19   forth the following standards for granting habeas corpus relief:

20            An application for a writ of habeas corpus on behalf of a person
         in custody pursuant to the judgment of a State court shall not be
21       granted with respect to any claim that was adjudicated on the
         merits in State court proceedings unless the adjudication of the
22       claim–

23            (1)  resulted in a decision that was contrary to, or involved an
         unreasonable application of, clearly established Federal law, as
24       determined by the Supreme Court of the United States; or

25            (2)  resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in the
26       State court proceeding.

                                        13

1  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

2  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

3  II.  State Court Proceedings

4         In the present case, the Lassen County Superior Court issued an order setting forth

5  its reasons for denying petitioner's first state habeas petition.  (Traverse, Ex. D.)  Petitioner

6  received postcard denials from the California Supreme Court and the California Court of Appeal.

7  (Pet. at page numbered (3).)  Each of the latter state court orders is "an unexplained order," i.e.,

8  "an order whose text or accompanying opinion does not disclose the reason for the judgment."

9  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

10        When confronted with a state court's unexplained order, the federal court must

11 apply the following presumption:  "Where there has been one reasoned state judgment rejecting a

12 federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest

13 upon the same ground."  501 U.S. at 803.  See also Robinson v. Ignacio, 360 F.3d 1044, 1055

14 (9th Cir. 2004).  In applying the look-through presumption, the unexplained orders are given no

15 effect.  501 U.S. at 804.  Accordingly, this court will look through the unexplained orders of the

16 California Supreme Court and the California Court of Appeal to the order of the Lassen County

17 Superior Court.

18 III.  Legal Standards Applicable to Petitioner's Constitutional Claims

19        The Due Process Clause of the Fourteenth Amendment prohibits state action that

20 deprives a person of life, liberty, or property without due process of law.  In general, a person

21 alleging a violation of the right to due process must establish that he was deprived of an interest

22 cognizable under the Due Process Clause and that the procedures attendant upon that deprivation

23 were not constitutionally sufficient.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S.

24 454, 459-60 (1989); Board of Regents v. Roth, 408 U.S. 564, 571 (1972).  Where a protected

25 liberty interest exists, the requirements imposed by the Due Process Clause are "dependent upon

26 the particular situation being examined."  Hewitt v. Helms, 459 U.S. 460, 472 (1983).  The

14

1   process due is such procedural protection as may be "necessary to ensure that the decision . . . is

2   neither arbitrary nor erroneous." Washington v. Harper, 494 U.S. 210, 228 (1990).

3          Inmates subjected to disciplinary action are entitled to certain procedural

4   protections under the Due Process Clause but are not entitled to the full panoply of rights afforded

5   to criminal defendants. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also Superintendent

6   v. Hill, 472 U.S. 445, 455-56 (1984); United States v. Segal, 549 F.2d 1293, 1296-99 (9th Cir.

7   1977) (observing that prison disciplinary proceedings command the least amount of due process

8   along the prosecution continuum). An inmate is entitled to advance written notice of the charge

9   against him as well as a written statement of the evidence relied upon by the factfinders and the

10  reasons for the disciplinary action taken. See Wolff, 418 U.S. at 563.

11         An inmate does not have a right to counsel, either retained or appointed, in

12  disciplinary proceedings. Id. at 570. Nor is the inmate entitled to assistance unless the inmate is

13  illiterate or the issue is so complex that the inmate may be unable to acquire "the evidence

14  necessary for an adequate comprehension of the case." Id.

15         An inmate "should be allowed to call witnesses and present documentary evidence

16  in his defense when permitting him to do so will not be unduly hazardous to institutional safety or

17  correctional goals." Wolff, 418 U.S. at 566; see also Ponte v. Real, 471 U.S. 491, 495 (1984)

18  (citing Wolff, 418 U.S. at 566). The right to call witnesses is subject to the "mutual

19  accommodation between institutional needs and objectives and the provisions of the

20  Constitution." Baxter v. Palmigiano, 425 U.S. 308, 321 (1976) (citing Wolff, 418 U.S. at 556).

21  "Prison officials must have the necessary discretion to keep the hearing within reasonable limits

22  and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as

23  to limit access to other inmates to collect statements or to compile other documentary evidence."

24  Wolff, 418 U.S. at 566. While it is useful for prison officials to state their reasons for refusing to

25  call a witness, doing so is not required by the Due Process Clause. Id.

26  /////

15

1    An inmate does not have a constitutional right to confront witnesses or to cross-

2    examine witnesses in a prison disciplinary hearing due to the inherent dangers and greater hazards

3    in the prison system.  Wolff, 418 U.S. at 567-69.  To the extent that a prison official permits

4    confrontation or cross-examination, the degree to which confrontation or cross-examination is

5    allowed lies within the sound discretion of the prison official.  Ponte, 471 U.S. at 495-96.

6    The disciplinary hearing must be conducted by a person or body that is

7    "sufficiently impartial to satisfy the Due Process Clause."  Wolff, 418 U.S. at 571.  The decision

8    rendered on a disciplinary charge must be supported by "some evidence" in the record.  Hill, 472

9    U.S. at 455.  A finding of guilt cannot be "without support" or "arbitrary."  Id. at 457.  The "some

10   evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable

11   evidence in the record that could support the conclusion reached by the factfinder.  Powell v.

12   Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-56, and Cato v. Rushen, 824

13   F.2d 703, 705 (9th Cir. 1987)).  Determining whether this standard is satisfied does not require

14   examination of the entire record, independent assessment of the credibility of witnesses, or

15   weighing of the evidence.  Hill, 472 U.S. at 455; Toussaint v. McCarthy, 801 F.2d 1080, 1105

16   (9th Cir. 1986).  "Instead, the relevant question is whether there is any evidence in the record that

17   could support the conclusion reached by the disciplinary board."  472 U.S. at 455-56.

18   In identifying the safeguards required in the context of disciplinary proceedings,

19   courts are required to remember "the legitimate institutional needs of assuring the safety of

20   inmates and prisoners" and to avoid "burdensome administrative requirements that might be

21   susceptible to manipulation."  Hill, 472 U.S. at 454-55.  The requirements of due process in the

22   prison context involve a balancing of inmate rights and institutional security concerns, and broad

23   discretion must be accorded to prison officials.  Wolff, 418 U.S. at 560-63.

24   /////

25   /////

26   /////

IV.  Discussion

In the four grounds for relief alleged in the petition before the court,[2] petitioner claims that (1) he was denied relevant evidence to prove his innocence, (2) he was denied a fair hearing and an impartial hearing officer and was found guilty despite the fact that no reliable evidence of guilt existed, (3) the guilty finding was improperly rubber stamped by reviewing staff, and (4) redress and due process were denied when staff denied his inmate appeal at every level.

    A.      Denial of Relevant Evidence of Innocence

Petitioner was charged with and found guilty of violating § 3005(b).  Section 3005 is a state regulation that governs the conduct of inmates.  Section 3005(b) provides as follows:

> Inmates and parolees must promptly and courteously obey written and verbal orders and instructions from department staff, and from employees of other agencies with authorized responsibility for the custody and supervision of inmates and parolees.

Cal. Code Regs. tit. 15, § 3005(b) (West 2006).  This regulation contains no exception to the requirement that inmates promptly and courteously obey written and verbal orders and instructions from staff.

It is evident from petitioner's own defense statement that he did not leave the yard at 11:30 a.m. when first ordered to do so, did not leave after further orders to do so, and did not leave the yard until after Captain Briddle came to talk to the inmates and then walked away. Although the precise times at which Captain Briddle spoke and the inmates left the yard have not been established, it is undisputed that petitioner did not leave the yard despite several orders to do so prior to the captain's arrival.

---

   [2]  Petitioner asserts that respondents denied paragraphs 12A, 12B, 12C, and 12D of the form petition but did not deny "their subparts contained within attachment pages a through k." (Traverse at 2.)  Petitioner contends that the "subparts" must therefore be deemed admitted.  (Id.) Petitioner is advised that all grounds for relief and the facts supporting each ground must be set forth on the form petition or on pages that follow the same format.  Rule 2, R. Governing § 2254 Cases.  Petitioner's attachments are not presented as continuation pages in which he alleges subparts of his four claims.  The court does not deem any of petitioner's claims admitted.

1    Petitioner's theory of innocence is grounded on his belief that he and the other

2  inmates were justified in refusing to comply with the orders of Officer Bartos while exercising

3  their right to redress grievances and the right "to timely speak to program staff upon request."

4  (Pet., attached page (g).)  Petitioner cites state regulations §§ 3084.1 et. seq., 3343(l), and 3345.

5  Petitioner also refers to the United States and California Constitutions and cites Bradley v. Hall,

6  64 F.3d 1276 (9th Cir. 1995).  These authorities do not justify the inmates' refusal to obey

7  correctional staff orders on November 13, 2000.

8    Section 3084.1 and the sections that follow provide for an inmate appeal process.

9  Section 3343 contains provisions concerning conditions in segregated housing.  Under the

10  heading "Visitation and Inspection," § 3343(l) provides as follows:

11    Inmates assigned to administrative segregation, including special
         purpose segregated units, will be seen daily by the custodial
12    supervisor in charge of the unit and by a physician, registered nurse
         or medical technical assistant, and, by request, members of the
13    program staff.  A timely response should be given to such requests
         wherever reasonably possible.

14

15  Cal. Code Regs. tit. 15, § 3343(l) (West 2006).

16    Section 3345 also concerns segregation housing:

17    The custodial officer in charge of a disciplinary detention,
         segregation or security housing unit where inmates are segregated
18    for disciplinary or administrative purposes, will insure that nothing
         is passed in or out of such units unless it has been thoroughly
19    inspected, that no unauthorized visitors are permitted in such units;
         that all laundry, shoes, clothing, or other materials and supplies
20    going to or from the units are carefully inspected; that inmates
         needing medical attention receive it promptly; that all locks and bars
21    are inspected and maintained in secure and proper working order;
         that proper precautions are taken in removing inmates from their
22    cells and in passing them from place to place.  The general welfare
         of inmates in segregated housing units and in all facilities therein
23    will be properly maintained and regularly inspected to insure human
         decency and sanitation.

24

25  Cal. Code Regs. tit. 15, § 3345 (West 2006).

26  /////

1      These regulations cited by petitioner do not authorize or permit an inmate to refuse

2   to obey orders while attempting to obtain redress of grievances or while waiting to speak to

3   program staff.  Although § 3341(l) suggests a "timely" response to an inmate request "wherever

4   reasonably possible," the regulation does not mandate that program staff respond immediately, or

5   within any specific period of time, and therefore does not justify petitioner's refusal to obey the

6   orders given by Officer Bartos on November 13, 2000.  Nor has petitioner cited any provisions of

7   the United States and California Constitutions authorizing an inmate to refuse to obey the orders

8   of prison staff while seeking redress of grievances outside established grievance procedures.

9      In the Ninth Circuit decision cited by petitioner, an inmate challenged the

10   constitutional validity of Oregon state regulations that prohibited disrespectful language in written

11   grievances.  Bradley v. Hall, 64 F.3d 1276 (9th Cir. 1995).  The district court held that the

12   regulations were facially valid but unconstitutional as applied to prisoner grievances.  64 F.3d at

13   1278.  The Ninth Circuit affirmed, holding that prison officials cannot discipline inmates for using

14   hostile, sexual, abusive, or threatening language in a written grievance because punishing a

15   prisoner for the contents of his grievance burdens the prisoner's ability to file grievances.  Id. at

16   1279.  Fundamental to the holding of Bradley is the principle that "[t]he right of meaningful

17   access to the courts extends to established prison grievance procedures."  Id.  This principle does

18   not assist the petitioner in this habeas case.  Petitioner was disciplined for delaying an officer in

19   performing his duties, in violation of a regulation that requires prisoners to obey orders given by

20   staff.  This case does not involve a regulation restricting the contents of prisoners' grievances or

21   otherwise burdening a prisoner's ability to file a grievance.  Although petitioner claims he was

22   justified in refusing to obey the yard recall orders because he was exercising his right to redress

23   grievances, petitioner's claim fails because he was not pursuing "established prison grievance

24   procedures" when he refused to leave the yard while waiting for the captain to make an

25   appearance to address the inmates' concerns in response to their demand.

26   /////

1          Petitioner's allegation that he was denied relevant evidence of innocence is

2   fundamentally flawed because petitioner was not innocent of the charge of delaying a peace

3   officer in the performance of his duties.  Although the videotape of the yard on November 13,

4   2000, might have resolved the issue of precisely when petitioner left the yard, it would not have

5   demonstrated petitioner's innocence because it would have confirmed that petitioner did not leave

6   the yard when ordered more than once to do so.  While the other inmates might have testified in

7   support of petitioner's theory of justification, their testimony would have confirmed that petitioner

8   did not leave the yard when ordered to do so.  The presence of the reporting employee was

9   unnecessary because petitioner's own defense statement contains the admission that petitioner did

10  not leave the yard until the captain arrived and talked to the inmates.  None of the requested staff

11  witnesses could have testified to petitioner's innocence.  Nor could additional investigative

12  services have assisted petitioner.

13         Petitioner is not entitled to relief on his claim that he was denied relevant evidence

14  to prove his innocence.

15       B.    <u>Denial of a Fair Hearing and an Impartial Hearing Officer and Lack of Reliable</u>

16            <u>Evidence of Guilt</u>

17         Petitioner alleges that he notified the hearing officer, during the disciplinary

18  hearing, of numerous violations of his administrative, statutory, and constitutional rights but the

19  hearing officer disregarded his objections and found petitioner guilty.

20         In this proceeding, petitioner is entitled to relief only for violations of federal law.

21  Petitioner has not alleged any violations of federal administrative or statutory law.  The Due

22  Process Clause of the United States Constitution guarantees that an inmate in disciplinary

23  proceedings is entitled to advance written notice of the charge against him, a disciplinary hearing

24  conducted by a person or body that is impartial, and a written statement of the evidence relied

25  upon by the factfinder and the reasons for the disciplinary action taken.  <u>Wolff</u>, 418 U.S. at 563.

26  The undersigned finds that petitioner was accorded these rights.

1   　　　　The Due Process Clause guarantees only a limited right to call witnesses and to

2   present documentary evidence in the inmate's defense.  Ponte v. Real, 471 U.S. at 495; Baxter v.

3   Palmigiano, 425 U.S. at 321; Wolff, 418 U.S. at 566.  As discussed above, the videotape and the

4   witnesses requested by petitioner would not have provided petitioner with a defense.  Therefore,

5   neither the unavailability of the videotape nor the hearing officer's denial of petitioner's request to

6   call witnesses violated petitioner's federal constitutional rights.  Moreover, it is apparent from

7   petitioner's explanation of his request for the presence of the ombudsman that he and his fellow

8   inmates hoped to use the disciplinary hearing into a forum for the nine inmates to complain to the

9   CDC director, the warden, and other high level staff about the handling of their inmate appeals

10  and other conditions of their confinement.  It was not an abuse of discretion for the hearing officer

11  to refuse to allow  witnesses to be called under such circumstances.

12  　　　　The Due Process Clause also requires that the decision rendered be supported by

13  some evidence in the record.  Petitioner claims that no reliable evidence existed.  However,

14  petitioner's own defense statement is a part of the record and provides reliable evidence that

15  petitioner did not leave the exercise yard when ordered to do so repeatedly, thereby delaying

16  Officer Bartos in the performance of his duties for at least an hour.  Petitioner's statement thus

17  corroborates the charge made in the reporting employee's report.  Petitioner's defense statement,

18  the reporting employee's report, and the statements made by the reporting employee to the hearing

19  officer on the telephone constitute reliable evidence in the record that supports the conclusion

20  reached by the hearing officer.

21  　　　　Petitioner argues that the rule violation report is not reliable because Officer Bartos

22  had a retaliatory motive for issuing the report.  Citing Hines v. Gomez, 108 F.3d 265 (9th Cir.

23  1997), petitioner argues that the "some evidence" standard does not apply to the rule violation

24  report issued by Officer Bartos.  In Hines, the prisoner brought § 1983 claims of retaliation against

25  a prison guard and a disciplinary hearing officer, alleging that the guard falsely accused him of a

26  rule violation and that the hearing officer falsely found him guilty of the charge.  108 F.3d at 267.

1   The prisoner alleged that both defendants acted in retaliation for his prior use of the prison

2   grievance system.  Id.  The Ninth Circuit affirmed the district court's application of the "some

3   evidence" standard to the hearing officer's disciplinary finding and also agreed that the "some

4   evidence" standard did not apply to the rule violation report for purposes of the prisoner's

5   retaliation claim against the guard.  Id. at 268-69.  See also Bruce v. Ylst, 351 F.3d 1283, 1289

6   (9th Cir. 2003) (holding that the "some evidence" standard applied to the civil rights plaintiff's

7   Fourteenth Amendment due process claim but did not apply to a First Amendment retaliation

8   claim where the plaintiff alleged that the defendants validated him as a prison gang affiliate in

9   retaliation for his jailhouse lawyering activities).  The present case is a habeas proceeding rather

10   than a civil rights case, and the claims before the court are due process claims rather than First

11   Amendment retaliation claims.  Therefore, the "some evidence" standard is applicable here.

12   Moreover, other reliable evidence in the record, including petitioner's own defense statement,

13   supports the accusation contained in the rule violation report issued by Officer Bartos.

14         All of the other "rights" asserted by petitioner, such as the right to the services of

15   an investigative employee, the right to question investigative employees, the right to confront the

16   reporting employee, and the right to be present during the hearing officer's telephone call to the

17   reporting employee, are not rights guaranteed by the United States Constitution and do not support

18   petitioner's federal claim that he was denied a fair hearing and an impartial hearing officer.

19         Petitioner is not entitled to relief on his claim that he was denied a fair hearing and

20   an impartial hearing officer and that no reliable evidence supporting his disciplinary conviction

21   existed.

22         C.    Approval of the Guilty Finding by Reviewing Staff

23         Petitioner alleges that the hearing officer's guilty finding was rubber stamped by

24   the staff who were required to conduct an independent audit of that finding.  The record does not

25   support petitioner's allegation that violations of due process are clear on the face of the rule

26   violation report and elsewhere in the record.  In addition, the right to an independent audit of a

1   disciplinary finding is not guaranteed by the United States Constitution.  Petitioner is not entitled

2   to relief on his claim that due process was denied when the hearing officer's guilty finding was

3   approved by reviewing staff.

4           D.    Denial of the Inmate Appeal

5           Petitioner alleges that his rights to redress of grievances and to due process were

6   denied in the processing of his inmate appeal and in the failure to reverse the hearing officer's

7   guilty finding.  Although petitioner initially withdrew his appeal because he felt threatened by the

8   staff members who responded at the first level, he reinstated the appeal and pursued it

9   successfully to the third formal level. Petitioner's complaint regarding the participation of staff

10   who had "prior involvement" does not invoke a right guaranteed by the United States

11   Constitution.  Petitioner's claim of bias is unsupported, and the record does not support

12   petitioner's allegation that there was clear evidence requiring his appeal to be granted.  Petitioner

13   is not entitled to relief on his claim of unconstitutional interference with his rights to redress and

14   to due process in the inmate appeal process.

15                     CONCLUSION

16           The record demonstrates conclusively that the requirements of federal due process

17   were met in petitioner's disciplinary proceedings.  The state court correctly identified and applied

18   Superintendent v. Hill, 472 U.S. 445 (1985), as the controlling federal law.  Pursuant to Hill, the

19   state court declined to reevaluate the evidence presented in the disciplinary proceedings and

20   determined that petitioner failed to show that there was no evidence to support the disciplinary

21   finding.  The adjudication of petitioner's claims by the state court did not result in a decision that

22   was contrary to or involved an unreasonable application of clearly established federal law.  Nor

23   did the adjudication result in a decision that was based on an unreasonable determination of the

24   facts in light of the evidence presented in the state proceedings.

25           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

26   writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and this action be dismissed.

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and shall serve a copy on all parties.  A document containing objections

5  should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to

6  objections shall be served and filed within ten days after service of the objections.  The parties are

7  advised that failure to file objections within the specified time may, under certain circumstances,

8  waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

9  1991).

10  DATED: October 31, 2006.

11

12  _____

13  DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

14  DAD:13
     lope2563.157

15

16

17

18

19

20

21

22

23

24

25

26

24